Good morning, your honor. Good afternoon to California, your honor. Can you hear me? Yes. Okay, thank you. My name is Gary Singh. I represent Mr. Carino. This is a case dealing with the issue of citizenship. My client, Mr. Carino, was born in the Philippines in 1981, and at the time him and his mother were not married, and his dad immigrated to USA in 1982. Thereafter, the father goes back to the Philippines and gets married to his mother in 1985. In 1988, Mr. Carino's father naturalized, and in 1990, the parents got divorced. They got divorced in the state of Hawaii. The father filed the divorce in Hawaii, because in the Philippines, they do not have divorces. And at the time of divorce, Mr. Carino was in the custody of the mother. So they had the decree showing joint legal primary physical custody to Mark. And as we go, as we move forward, Mr. Carino moves to USA in 1991. Okay, he is in USA, and in 2013, we filed a motion with the family court in the state of Hawaii to modify the decree, because Mr. Carino was dealing with proceedings. Furthermore, when Mr. Carino was 22 years old? Mr. Carino was older than, he was over the age of 18, Your Honor. Yes, so you filed a petition to modify the custodial arrangements of someone who couldn't be in custody of anyone because he was a competent adult at the time. What we did was we asked the court in Hawaii that he should order for non-proton going back to the date arrived. But you filed it when your client was a competent adult who legally couldn't be at that time in the custody of anyone because he was a competent adult. That is correct, Your Honor. And the entire purpose of your filing this was not because the court order was somehow wrong, or because it didn't describe the actual legal custody status, but because if the court entered this, this would give you an argument as to how your client had derived derivative citizenship. Because without that, there was no possibility of that, right? Judge, I was going back to correct an error that Mr. Carino's father made when my client immigrated. Okay, so let me go back to my question. The purpose of your filing was to help make an argument that your client had derived derivative citizenship, right? Because it obviously had nothing to do with custody since he was an adult. That is correct, Judge. And you weren't arguing that there had been some type of typographical or Scrivener's error in the original order that had been entered in 1990. You just wanted basically it to be changed non-protonically. You weren't saying, oh no, it should have been. So what the parties decided on was sole custody to my client and the clerk got it wrong. It was that this is what the order was, but you want to change non-protonically because you wanted to help with your client's immigration case. That is correct. And also the facts were your honor that my client did immigrate to Kauai in 1991. And my client's father was not sophisticated enough to understand that he should have gone back into the family court and amended the divorce decree to show that he had sole physical and legal custody. And Judge, for the record, since 1991, Mr. Carino's father took him to school. His father was the sole provider, took him to the doctor. His mother immigrated. But counsel, you just said to have it reflect that the father had sole legal custody, to have it accurately reflect that the father had sole legal custody. But in fact, the father did not have sole legal custody because legal custody was determined by the order that had been entered in 1990, right? Regardless of who had physical custody, legal custody is determined by the family court's 1990 order, right? That was joint, right? So your client did not have legally sole legal custody of the child. He, along with the child's mother, had joint legal custody, correct? When he immigrated in 1991, Judge? No, he did not. You're right. In paper, that is correct. 1991, when he immigrated, the divorce decree reflected that mother had sole physical custody. And that was not correct also, Your Honor, because mother was not with the child back in 1991. She had to sign papers to authorize State Department to issue him a visa to come to USA. But so, counsel, at the time of the so-called non-protonc order, your client, if my math is right, was 31. So would there be any principle that would stop a non-protonc order when someone, if their parents are still alive and can be parties, could be 61 and have the same non-protonc order issued? Is there any limiting principle that you're arguing? Or is it it doesn't matter as long as the family court theoretically had the jurisdiction to enter the order? It doesn't matter how old the former child is when the non-protonc order is entered? Well, Your Honor, if family court thought that they had good jurisdiction because my client's age was irrelevant at the time, they would not have issued the order. Well, maybe Judge Remigio believed that this would help your client's immigration case, and maybe that's why she signed the order. But isn't that sort of ceding citizenship to family courts of the states instead of... And so allowing someone who's a judge of a family court to make a citizenship determination with regard to recasting events that happened decades before? Your Honor, even before Judge Remigio, Mr. Carino's dad was present, testimony was taken, and it was very clear that the father testified that yes, when Mr. Carino moved to Hawaii in 1991, he has been the sole provider. He's taken to the other doctors. He signed them up in school. Mother never immigrated. Mother never participated in his life. Based on that, the judge decided to move forward. Why don't you hold on a second, Mr. Singh? We'll give you some extra time. I'm not sure what's causing the feedback. Why don't you try again? And as I say, we'll give you some extra time. Go ahead, Mr. Singh. Judge, I'm not sure. Okay. The last statement that I made was Mr. Carino's father did appear before Judge Remigio at Kapolei to testify that back in 1991, his son came to Hawaii, resided with him. Mother never immigrated to America. His father was the sole provider who took him to the doctors, signed him up at school, the sole physical and legal custody custodian of the child. Based on his testimony is where the judge decided to move forward and issue the order of non-pro-tunk. So, counsel, the BIA quoted our colleagues on the First Circuit in the FIERA case as saying that reliance on a non-pro-tunk order that was issued for immigration purposes as the basis for derivative citizenship would, quote, on grounds of perceived equity or fairness, period, close quote, and that wasn't permitted by the U.S. immigration laws. Why were our colleagues on the First Circuit wrong? Well, Judge Bhima in Honolulu, immigration judge, reviewed this case, read the testimony, she looked at the Ninth Circuit law, she looked at the BIA decision, and, Your Honor, it's a case that comes out of Ninth Circuit that is unpublished. Joel, the book, which says Ashby goes back to 2004, deals with the same issue where a person from the Philippines emigrates and because the families are not sophisticated enough to go back into court and make the changes. Counsel, I don't think you're really meeting the question. We have circuits and we're not bound by other circuits, but we do have a standing rule that we all agree to in the Ninth Circuit that we won't create an inter-circuit conflict unless it's absolutely necessary. So if we chose to follow the First Circuit, which is a very logical rule, there's nothing wrong with it. Absent, I understand, isn't helpful to you, but there's nothing wrong with it as a position. Why would we want to do that? What is the basis upon which we would say it's okay to have a... Do not use the elevator. Okay, so I don't know where that... Your Honor... Is that your office, Mr. Singh? Yeah, I'm in the Topa building and the emergency lights just went off. Okay, so do you feel you need to exit the building? I believe so, Your Honor. That's their announcement. All right, let's do this. Let's take a recess and we'll see when you come back. Judge Wallace and Judge Bea, I would suggest we proceed to the fourth case and when we're finished with that. No, no, no, of course, Mr. Singh, and let Mr. Singh exit his building. Is that okay? Please proceed to the... Judge Wallace, is that okay with you? Yes, you, go, save your life. We're going to go back to Padilla-Carrino versus Bogg and we're going to go back in the with you on your time given the interruption. Make sure that you're able to make all of the arguments you want. So as I say, we'll be flexible with you on the time, including giving you some rebuttal time. So when you're ready to start, please start. Thank you. I apologize for the interruption. Not your fault. Thank you. You still have a building? Well, there was a fire on the 17th floor, so that was the reason they got it going. And Judge, if you have any other questions, I'll be happy to answer and I will reserve my time. All right. Thank you. Counsel for the Attorney General? Good morning, Your Honors. May it please the Court. Laura Halliday Hickam for the U.S. Attorney General. The Court should find that the non-protonc order in this derivative citizenship. He didn't satisfy the conditions for automatic derivative citizenship during his childhood. And the non-protonc order seeks to create a legal fiction that doesn't represent the conditions as they actually were during his childhood. And it doesn't serve the purpose of the statute. It contravenes congressional intent and creates an impermissible loophole. So, Counsel, you would agree that if there were evidence that the non-protonc order actually represented the facts, that is, that there had been some error in the original order, that what was really intended was sole custody or a Scrivener's error or something like that, that you're not saying we should rule that a non-protonc order can never be relevant to your case? Because I understand your argument is that here it clearly isn't. Sure. That is the argument. But here it clearly isn't. It was equitable relief sought to avoid the consequences of the immigration consequences of his aggravated felony. And actually, Opposing Counsel had mentioned the unpublished 2004 case in the book, I believe it is. And in that case, it is completely distinguishable. Because in that case, the issue was about the custody. And it was a similar order, retroactive order. But the Hawaii court, state court there, looked at facts. They found that in 1984, when that child had immigrated, the mother had notarized a agreement transferring custody to the father. And the court said, the Hawaii court said that was within the parents' rights to do. They didn't have to go to court to modify the agreement giving the father. And so, retroactively commemorating that, what the court would have found in 1984 is completely different than entering a legal relationship that didn't exist. And in this case, at a court, during any point in the petitioner's childhood, looked at the custody agreement. It was a 1990 joint custody agreement. And it was in effect the entirety of the petitioner's childhood. And this particular point... What about counsel's argument that even if that was legally in effect, factually, his client was the one who really had physical custody and was doing everything? Sorry, that the father was the one who had physical custody and was doing everything for his client. And the mom was back in the Philippines. There's a legal custody order. In effect, the court doesn't look at the facts of the case because physical custody and legal custody are two different custody issues. And so, the fact that the father had physical custody didn't negate the mother's joint custodial rights. And it also isn't relevant to look at if she exercised those custodial rights. She was a joint custodian. She had joint custody throughout the entirety of the petitioner's childhood. And that's the relevant period that the statute is concerned with. The childhood of someone is a finite period of time. And automatic derivative citizenship is concerned with the conditions that were in effect during someone's childhood. And if those conditions are met, automatic derivative citizenship arrives automatically. Nothing needs to be done. And so, it's antithetical to that statute to say that someone could obtain equitable relief in their 30s to go back and alter the custody agreement to create a legal fiction that was not in effect at the time of his childhood in order to create a loophole to avoid the immigration consequences. And this court should find, as the other circuits who have addressed this issue did, that the relevant period of time is the childhood and the conditions that actually occurred during the child's childhood. And retroactively creating a legal fiction represent facts that didn't actually occur is antithetical to the statute. In this court in Minnesota, although it didn't consider it that specific issue of the non-court time period retroactively altering the legal relationship, it did cite the First Circuit's logic favorably and did note that altering a legal relationship retroactively wouldn't be in service to the statute. And so, does the court have any further questions? I don't have any questions, counsel. I don't know. Judge Walton? Judge Bair? Is it your position that you think we should adopt the First Circuit case in the Ninth Circuit? The First Circuit's logic, as well as the Fifth Circuit's logic, is what the government is arguing is appropriate. That the conditions that were in existence during a person's childhood are the relevant conditions for purposes of automatic derivative citizenship and to try to retroactively create a legal fiction that does not represent the actual facts as they were during the person's childhood would not serve the purpose of the statute and would, in truth, be antithetical to the purpose of the statute, which is concerned with the facts that are in existence during a person's childhood. And it didn't need to be, just to address opposing counsel's point, that the custody agreement had to be amended. If petitioner's father had wanted to obtain citizenship for his son, for petitioner, he would have needed to affirmatively petition. He didn't need to have sole custody. It just is, if you don't have sole custody, it doesn't automatically derive. Am I remembering correctly, he petitioned and then withdrew the petition? Or am I remembering it correctly? Yeah, he petitioned and it was denied and he was told that he needed to, he petitioned for a certificate of recognition recognizing the automatic derivative citizenship and it was denied and he was told if he wanted to obtain citizenship, he needed to affirmatively petition and that would be an affirmative petition for bi-racial citizenship, which wouldn't have required amending the custody agreement, nor would petitioner self-petitioning when he became an adult. It is just that it doesn't automatically derive unless the naturalized parent has sole custody. And that's to protect the rights of all the parties that are involved because if the conditions are met... Yes, your honor. If I understand correctly, that he has is that correct? He was granted that by the immigration judge on the board, yeah. And so this is not a removability case. It's only the question of citizenship. He was granted... I understand what it is. Now, was that granted by the board? It was granted by the immigration judge. By the immigration judge. Was it appealed to the board? It was appealed. Well, the procedural history is kind of convoluted, but no, it wasn't. Does that have anything to do with the case we have before us? No, that's not disputed. His grant of cat relief or cat protection is not an issue. He has that. The only issue is the citizenship issue. I see. This only protects him from not getting the opportunity returned to the Philippines. Okay, thank you. Thank you, your honors. If there's no further questions, the government submits that the court should find that the non-quotation order retroactively granting sole custody over a now adult would create a legal fiction that would impermissibly create a loophole in federal immigration. And the court asks that the court deny the petition and find that the non-quotation order is immaterial for purposes of automatic derivative citizenship. Thank you, your honors. Thank you. Mr. Singh, you have a substantial amount of time left for rebuttal. Thank you, Judge. The last question that was asked by the judge in regards to his relief that was granted by Judge Beamer, that was the cat relief. And that is only valid until President Duterte is in the office. Mr. President Duterte had been threatened to kill anyone with drug convictions. And because of that, I was able to go before Judge Beamer and submit the application that was granted. So that is only good as long as President Duterte is in power. The day is out. If the new president comes in, my client will be removed if the policy changes in the Philippines. Now, going back to the order of Nguyen Phuong Tong, we've got to look at the facts, your honors. The facts are, again, 1991, he comes in. And one of the issues that was discussed in immigration court before Judge Beamer in order for Mr. Carino to jump on the plane or get a visa from the State Department, the mom had to sign a release. Because the mom had physical, joint physical custody with dad. The State Department would not have to shoot a visa if she said, no, my son is not going to America. But there was the argument where we were unable to get that because that was the information on the file. I was unable to locate it. This was going back to 1991. So our argument before the judge Beamer was immigration court mom gave consent to the State Department. Therefore, State Department issued a visa for Mr. Carino to emigrate at the age of 10 or 11. And at a later time, the dad did submit an N-400 for certificate of citizenship. And that's when he realized that because of the decree did not give him 100% custody, he had to withdraw it. When he withdrew the application, his child was residing with him. He was taking care of the child every day, taking him to school, making sure he was fed, making sure his medical needs were taken care of. The father was making 100% decisions, physical and legal. Mother was thousands of miles away. Mother did not know that he had to go to court and change the order. And all this was presented to the judge when we went back into family court at Kapolei. So this is not a loophole, to be honest. This is what really happened here. These are the real facts. Based on that, we will ask the court to honor Family Court's Nguyen Van Tong decision, giving father custody going back to 1991, and also to honor Judge Beamer's decision, granting him citizenship. Thank you. Thank you. We thank counsel for their helpful arguments and the case just argued is submitted. With that, we are adjourned for the day and the week. Thank you.
judges: Wallace, Bea, Bennett